HONORABLE THOMAS S. ZILLY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WASHINGTON
AT SEATTLE

AIRBIQUITY INC., a Washington corporation,

                Plaintiff,

vs.

AT&T MOBILITY LLC, a Delaware limited liability company; NEW CINGULAR WIRELESS SERVICES, INC., a Delaware corporation; and NEW CINGULAR WIRELESS PCS LLC, a Delaware limited liability company,

                Defendants.

CIVIL ACTION NO. 2:08-CV-00094-TSZ

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a)**

**ORAL ARGUMENT REQUESTED**

**DORSEY & WHITNEY LLP**
U.S. BANK CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................1

II. ARGUMENT......................................................................................................................1

    A.    The FCC's Attendance at TTY Forum Meetings and Insistence on Compliance With the TTY Mandate does not Equate to Authorization or Consent Under § 1498(a) ....................................................................................2

        1.    The FCC's "Active Involvement" in the TTY Forum did not Extend to Developing a Technical Solution for Transmitting TTY Signals.....................3

        2.    The FCC did not Reject Any Technical Solution for *Compliance* ....................5

        3.    The FCC did not Participate Substantively in any TTY Forum Discussion of the Proposed Solution Ultimately Adopted as the Technical Specification...........................................................................................7

        4.    The FCC Made no Technical Contribution to the Development of Testing Procedures for the Technical Specification .........................................8

        5.    The FCC did not "Push" the Industry to Implement any Particular Technical Solution .....................................................................................................8

    B.    The FCC's Requirement That Wireless Companies Comply With the TTY Mandate does not Equate to a Requirement That a Particular Technology be Adopted.......................................................................................................................9

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE
OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a) - i
2:08-cv-00094-TSZ

**DORSEY & WHITNEY LLP**
U.S. BANK CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bereslslavsky v. Esso Oil Co.*,
    175 F.2d 148 (4th Cir. 1949) .................................................................................9, 10

*Hughes Aircraft Co. v. United States*,
    29 Fed. Cl. 197 (1993) ...............................................................................9, 10, 11


**STATUTES**

28 U.S.C. § 1498(a) ...................................................................................1, 2, 4, 10

47 CFR § 20.18(c)......................................................................................1, 3, 4, 6, 7

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE
OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a) - ii
2:08-cv-00094-TSZ

**DORSEY & WHITNEY LLP**
U.S. BANK CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

# I. INTRODUCTION

Defendants moved to continue the present motion, which has been pending and fully briefed since December 15, 2008, so they could gather new evidence that their infringement of Airbiquity's patents was "with the authorization or consent of the Government." Now, after five months, they have dumped in the Court's file approximately five hundred pages of documents attached to the Declaration of Jeffery Baxter, and reference hundreds of pages previously filed with the Declaration of Travis Thomas. *Quantity* does not equal *quality*. Filing telephone book sized heaps of paper will not make governmental immunity a viable defense if the evidence does not show that the Government authorized or consented to infringement of Airbiquity's patents. Defendants have cited *nothing* from the depositions they said they needed to oppose Airbiquity's motion. The arguments defendants make in their Supplemental Response and their "new" evidence are merely cumulative of what they filed before.

# II. ARGUMENT

AT&T's argument to avoid summary judgment relies on two premises. First, they proffer proof that the FCC attended TTY Forum meetings, and they argue that the FCC's attendance equates to a requirement that AT&T adopt the 3GPP TS 26.226 specification (the "Technical Specification") that, when implemented in its handsets, results in infringement. Second, they argue that the FCC's insistence that the wireless industry comply with 47 CFR § 20.18(c) (the "TTY Mandate")—which requires the wireless industry to implement a solution for transmitting TTY signals on digital wireless networks—equates to a requirement that AT&T adopt the Technical Specification. From these two premises, AT&T urges the Court to conclude that it has proffered evidence of Governmental authorization or consent under Section 1498(a).

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE
OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a) - 1
2:08-cv-00094-TSZ

DORSEY & WHITNEY LLP
U.S. BANK CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

Both arguments fail. The first is not supported—indeed, contradicted—by the evidence that AT&T cites, and both the first and second arguments fail because even if supported, they do not equate to a requirement that AT&T adopt the particular infringing technology at issue here.

**A.     The FCC's Attendance at TTY Forum Meetings and Insistence on Compliance With the TTY Mandate does not Equate to Authorization or Consent Under § 1498(a)**

Defendants have filed two telephone book-sized stacks of paper allegedly supporting their original and supplemental responses, however, they cite to only a few pages of these voluminous documents. Defendants argue that this evidence proves "the Government's direct and pervasive involvement in the development and adoption of the Technical Specification" (Supp. Resp. at 2:1-2); the FCC was "'actively involved' in the TTY Forum's efforts to develop solutions for providing TTY capability in wireless telephones (Supp. Resp. 2:3-5);" the FCC "rejected proposed solutions that it did not like (2:5-6);" the FCC "specified the procedures by which the Forum's proposed solutions were tested (2:8-9)." In fact, however, review of the pages that defendants actually rely upon reveals that they do not support these factual propositions.[1] *Many of the pages that defendants cite are merely TTY Forum attendance sheets, showing only that an FCC representative attended without making any substantive contribution.*

In fact, defendants' evidence shows that while FCC representatives attended most TTY Forum meetings, their actual *participation* in those meetings was minimal, typically no more than introducing new FCC representatives and thanking the industry for submitting periodic compliance status reports. Carlson Dec. ¶ 3 and Ex. B, H, K, L and N-S. When they did

---

[1] To assist the Court in the review of the enormous pile of documents that defendants filed, Airbiquity submits the Declaration of Mark S. Carlson, which attaches only the pages of their filings that they actually cited, and highlights the paragraphs upon which they relied.

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE
OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a) -2
2:08-cv-00094-TSZ

DORSEY & WHITNEY LLP
U.S. BANK CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

participate in a meeting, the FCC representatives were careful to draw a distinction between insisting that the industry comply with the "TTY Mandate," and dictating technical solutions to the industry. Carlson Dec. ¶ 3 and Ex. A (INV00006-7). The FCC remained "actively involved" in the TTY Forum meetings in insisting that the industry comply with the TTY Mandate., but without exception, it left development of technical solutions entirely to the wireless industry.

### 1. The FCC's "Active Involvement" in the TTY Forum did not Extend to Developing a Technical Solution for Transmitting TTY Signals

Defendants argue that the FCC was "actively involved" at TTY Forum meetings in developing a technical solution for transmitting TTY signals on digital networks. Their point is that the Government—through the FCC's participation in the TTY Forum—required them to adopt the Technical Specification that, when implemented in defendants' wireless handsets, infringes Airbiquity's patents. According to defendants, the FCC's alleged "active involvement" in developing the technical solution during TTY Forum meetings satisfies the "authorization and consent" prong of the test for application of Section 1498(a) governmental immunity.

The evidence that defendants rely upon to avoid summary judgment—TTY Forum meeting reports, essentially, minutes of the meetings—does not support defendants' argument. Defendants present three and a half pages of bullet-pointed descriptions of TTY Forum meetings, as evidence that "the FCC did not merely attend these meetings and passively observe the Forum," but rather "intended to take an active role in the group's efforts." Defs. Supp. Brf. at 8. Almost all of defendants' evidentiary citations to TTY Forum meeting minutes, however, are to the *attendance sheets* of the meetings, and to the FCC report, in which the FCC representatives typically said they had nothing to report, merely introduced new FCC representatives, thanked

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE
OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a) -3
2:08-cv-00094-TSZ

DORSEY & WHITNEY LLP
U.S. BANK CENTRE
1420 FIFTH AVENUE. SUITE 3400
SEATTLE, WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

the industry attendees for submitting status reports, or made similarly non-substantive comments. *See,* Carlson Dec. ¶ 3, and exhibits thereto. It is true that at many of these meetings, the *industry representatives* participated in technical discussions, however, the minutes of these discussions establish that the FCC representatives did not participate in them. In fact, plaintiffs identified only a single instance in which an FCC representative said *anything* during any of these technical discussions, consisting of only two questions. Carlson Dec. ¶ 3 and Ex. J at INV0006481-84.

The evidence defendants cite in fact supports Airbiquity. It shows that the FCC attended TTY Forum meetings, but its representatives preserved a distinction between "active involvement" in insisting on compliance with Section 20.18(c), and meddling in the development of a technical solution. The opening comments of FCC representative Won Kim made clear in the first TTY Forum meeting cited by defendants that the FCC would have no role in determining technical solutions for compliance with the TTY Mandate:

> [The FCC] did not attempt to establish extensive technical standards for E9-1-1 operation, noting that industry standards-setting committees should address precise technical requirements for E9-1-1 compatibility . . . [T]he industry should determine and establish standards to permit interface between TTYs and wireless systems . . . ."

Baxter Dec. Ex. B (INV0000001-28 at 7) (Carlson Dec. Ex. A). In fact, the FCC considered and *expressly declined* to undertake the role that defendants attempt to ascribe to them. In the FCC's original September 19, 1994 Notice of Proposed Rule Making, it reported:

> We propose to adopt rules to improve the access of users of mobile radio services to 911, particularly enhanced 911 services. While *we do not anticipate adopting extensive technical standards for enhanced 911 operation—industry standards-setting committees are better equipped to address precise technical requirements for enhanced 911 compatibility—* we propose that general performance criteria be adopted.

**DORSEY & WHITNEY LLP**
U.S. BANK CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

Thomas Decl. Ex. A at 14 of 39 ¶ 40 (emphasis supplied). The FCC reaffirmed its passive role

with respect to what particular technologies should be adopted for compliance in its June 12,

1996 Report and Order and Further Notice of Proposed Rulemaking (Thomas Decl. Ex. C):

> While we are taking action in this Order to ensure the provision of 911 and E911 services over certain commercial wireless communications systems, and intend to closely monitor implementation of our decision, we do not believe it would be appropriate for the Commission to micromanage this process. We confirm our tentative conclusion in the *Notice* [Thomas Ex. A, above] that we should determine what capabilities must be achieved, rather than attempting to promulgate extensive technical standards.

*Id.*, at p. 26 of 91 (page 25 of the document) ¶ 73. Accordingly, the FCC directed the *industry* to

resolve technical issues, rather than impose any particular technical solution:

> Covered carriers, in coordination with the public safety organizations, are also directed to resolve certain E911 implementation issues, including grade of service and interface standards through industry consensus in conjunction with standard-setting bodies.

47 CFR Part 20 at 40349 (Thomas Decl. Ex. D at page 3 of 6) ¶ 8.

Defendants' own evidence demonstrates that the FCC declined to involve itself in

developing or selecting the technical solution for compliance with Section 20.18(c). Even their

witness, Scott Prather, testified by declaration that the Technical Specification was "developed

and adopted" by "the wireless industry," not the FCC. Prather Decl. ¶¶ 7-8 (Dkt. 67).

Consequently, its attendance at TTY Forum meetings does not equate to "authorization and

consent" to any technical solutions presented at those meetings.

### 2. The FCC did not Reject Any Technical Solution for *Compliance*

47 C.F.R. § 20.18(c) required that wireless carriers be capable of transmitting 911 calls

from individuals with speech or hearing disabilities through TTY terminals, and in its First

Report and Order the FCC made it clear that the industry must provide TTY access to 911

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE
OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a) -5
2:08-cv-00094-TSZ

**DORSEY & WHITNEY LLP**
U.S. BANK CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

emergency services, and required coordination with PSAPs (the public safety answering points, where trained call center professionals handle 911 calls). First Report and Order at ¶ 49 (Thomas Decl. Ex. C) Thus, compliance with the TTY Mandate required at least (1) transmitting and receiving TTY signals over digital wireless networks; (2) by PSAPs; (3) to provide emergency 911 service for the speech and hearing impaired.

AT&T emphasizes that members of the wireless industry petitioned the FCC to reconsider its order, and sought permission to rely on existing Short Message Service ("SMS") "text messaging" already built into many digital handsets for emergency 911 calls, rather than having to develop a solution for TTY transmission over digital networks. Defs. Supp. Brief at 8-9. These alternative technologies were referred to as "functional equivalents." *Id.* It is true that the FCC denied the petition, however, the reason for the denial was not, as AT&T argues, because the FCC had arrogated to itself the final word on which technologies should be adopted to *comply* with Section 20.18(c). Rather, the FCC determined that the "functional equivalents" *would not comply* with the TTY mandate, finding that they are "[n]ot an appropriate or practical alternative for hearing and speech impaired persons in an emergency":

> because few PSAPs are configured to accept short messaging
> services directly and not all PSAPs can accept ASCII type TTY
> calls and other types of data calls.

Baxter Decl. Ex. Q, at INV0000055.

AT&T cites a single phrase in one sentence in one document, in which the FCC referred tots "determination of the best means to accomplish compliance with the requirements of Section 20.18(c)" based on evaluation of certain test results. Defs. Supp. Brf. at 9. The author does not explain what role the FCC was to play in this determination. AT&T has not produced a single

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE
OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a) -6
2:08-cv-00094-TSZ

DORSEY & WHITNEY LLP
U.S. BANK CENTRE
1420 FIFTH AVENUE. SUITE 3400
SEATTLE. WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

document evidencing that the FCC ever attempted to make such a determination. In all instances, the evidence shows that while the FCC remained actively involved in the TTY Forum to require *compliance* with the TTY mandate, it consistently declined to dictate the specific technical solution to be adopted for compliance.

### 3. The FCC did not Participate Substantively in any TTY Forum Discussion of the Proposed Solution Ultimately Adopted as the Technical Specification

Defendants cite to *twenty* different TTY Forum meetings, documented by reports containing minutes that reflect the contribution of each attendee. Of these meetings, they cite only <u>one</u> instance in which any FCC representative said anything during a technical discussion. Defendants describe the technical presentation at length in their Supplemental Response. In summary, at the September 9, 1999 twelfth meeting of the TTY Forum, Ericsson representatives described one possible technical solution, which included a "smart cable" between the TTY terminal and the cellular handset. Baxter Decl. Ex. K (INV0006473-510 at 6481-85) (Carlson Dec. Ex. J). In over four pages of discussion, only two questions appear from the FCC:

> Comment: ***Dale Hatfield, FCC, observed that there has to be a change to the switch since there has to be some identifier to mark the beginning of the TTY call.*** Answer: The coding will be in the subscriber profile. Question: ***Dale Hatfield then asked to understand the call flow when placed from a landline.*** Answer: The MSID identifies the mobile station as TTY capable and the call will be routed through the function.

*Id.*, at INV0006482-83 (emphasis supplied). These two questions are a far cry from an FCC requirement that the Forum must adopt particular infringing technology.

AT&T also notes that the FCC subsequently sought public comment on the proposed Ericsson solution. It then argues "[o]bviously, if the comments indicated the proposed solution was unacceptable, the FCC would have required the GSM industry to modify the solution . . . ."

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE
OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a) -7
2:08-cv-00094-TSZ

DORSEY & WHITNEY LLP
- U.S. BANK CENTRE
1420 FIFTH AVENUE. SUITE 3400
SEATTLE. WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

Defs. Supp. Brf. at 11. This is sheer speculation as to what the FCC would have done if public comment had been different than it apparently was. It seems more likely that the FCC would have, consistent with its policy of leaving development of technical solutions entirely to the wireless industry participants, forwarded any adverse comments to the industry for consideration. In any event, the FCC's solicitation of public comment does not equate to a mandate that the wireless industry adopt Ericsson's particular technical solution.

### 4. The FCC Made no Technical Contribution to the Development of Testing Procedures for the Technical Specification

AT&T argues that "the FCC was also actively involved in developing testing procedures for the proposed solution," citing TTY Forum – 8, Draft Report (Baxter Decl. Ex. G) (Carlson Decl. Ex. F). That document, however, shows only that the FCC was concerned about the *pace* of testing, *i.e.*, whether it would be completed in time for the deadline for compliance (Baxter Decl. Ex. G at INV0000180, 182), and the opportunity for the public to participate in the tests (Baxter Decl. Ex. G at INV0000181), *not* the specific protocols for tests to be performed.

### 5. The FCC did not "Push" the Industry to Implement any Particular Technical Solution

AT&T argues that "the FCC actively monitored, evaluated, consented to, and even pushed for the implementation of the Technical Specification as the industry standard for providing TTY capability in GSM networks . . . ." Defs. Supp. Brf. at 13. In fact, they cite to FCC comments approximately one year before the deadline for compliance that (1) express concern that "the GSM community seems to still be debating implementation methods of the TTY solution;" (2) oppose the lack of work "being done in the GSM standards bodies relating to TTY support;" and (3) warn that "the GSM community will be carefully watched by the FCC to

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE
OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a) -8
2:08-cv-00094-TSZ

DORSEY & WHITNEY LLP
U.S. BANK CENTRE
1420 FIFTH AVENUE. SUITE 3400
SEATTLE. WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

ensure full compliance with all mandates and orders." Baxter Decl. Ex. P (at page 7 of 12).

AT&T misrepresents this warning by calling it a "push[] for the implementation of the Technical Specification . . . ." Rather, the commission merely continued to insist upon timely compliance, without imposing any particular technical solution.

**B.      The FCC's Requirement That Wireless Companies Comply With the TTY Mandate does not Equate to a Requirement That a Particular Technology be Adopted**

AT&T cites two cases, *Bereslavsky v. Esso Oil Co.*, 175 F.2d 148 (4th Cir. 1949) and *Hughes Aircraft Co. v. United States*, 29 Fed. Cl. 197 (1993) (both of which the Court has seen in their prior briefing), for the proposition that "the Government may implicitly give 'authorization or consent' by requiring a party to engage in an allegedly infringing activity." Defs. Supp. Brf. at 13-14.  The material facts in both *Bereslavsky* and *Hughes Aircraft* are not present here, so their rationales do not apply.

In *Bereslavsky*, a patent owner sued the Defense Supplies Corp., which was acting as a private purchasing agent for the United States military.  The patent owner alleged infringement of a patent covering aviation fuel that included a specific hydrocarbon, which was present in the fuel that Defense Supplies Corp. sold to the Government.  The Fourth Circuit found that Defense Supplies Corp.'s contract with the Government included express specifications that "necessarily resulted in a product containing the infringing ingredients." *Bereslslavsky*, 175 F.2d. at 150. Accordingly, the Fourth Circuit found that authorization and consent was implicit in the terms of the procurement contract between Defense Supplies Corp. and the Government. *Id.*

Similarly, in *Hughes Aircraft*, the United States contracted with Rockwell International Corp. to build GPS satellites.  The Government procurement contract at issue required a satellite

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE
OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a) -9
2:08-cv-00094-TSZ

DORSEY & WHITNEY LLP
U.S. BANK CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

that embodied the invention in a patent assigned to plaintiff Hughes Aircraft. Rockwell's contract with the Government contained an express "authorization and consent" clause:

> [t]he Government hereby gives its authorization and consent (without prejudice to any rights of indemnification) for all use and manufacture, in the performance of this contract . . . of any invention described in and covered by a patent of the United States (i) embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract . . . .

*Id.* at 222. The court reasoned that the Government had "authorized" the manufacture of the accused satellites within the meaning of Section 1498(a) "when Rockwell became contractually bound to build a spacecraft embodying the [asserted] patent." *Id.* at 223.

AT&T's reliance on these cases is wholly misplaced. Government contracts that expressly specify procurement of an infringing article for the United States are not analogous in any way to the facts here, where a Government bureau merely issued a regulation for an industry, and required compliance, *without specifying adoption of any specific technology.* AT&T argues that these cases are analogous, because "[t]he Government (1) required the GSM standard-setting body to adopt a standard for providing TTY capability, and (2) required the Defendants to implement the standard that the FCC approved as a result of its participation in the TTY Forum." Here, however, the FCC did not specify or require adoption of the *particular* Technical Specification that, when implemented in wireless handsets on AT&T's network, infringes Airbiquity's patents. Rather, the FCC left the choice of what technology should be adopted to comply with the TTY Mandate entirely up to the industry. Thus, the Government did not "authorize or consent" to infringement of Airbiquity's patents by the industry in its effort to comply with the TTY Mandate, and accordingly, *Bereslovsky* and *Hughes Aircraft* do not apply.

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE
OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a) -10
2:08-cv-00094-TSZ

**DORSEY & WHITNEY LLP**
U.S. BANK CENTRE
1420 FIFTH AVENUE. SUITE 3400
SEATTLE, WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

1    DATED this 22nd day of May, 2009.

2                                              Respectfully submitted,

3                                              DORSEY & WHITNEY LLP

4                                              /s/ Paul T. Meiklejohn
                                               Paul T. Meiklejohn, WSBA No. 17477
5                                              Mark S. Carlson, WSBA No. 17493
                                               Douglas F. Stewart, WSBA No. 34068
6
                                               Attorneys for Plaintiff Airbiquity Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE
OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a) -11
2:08-cv-00094-TSZ

DORSEY & WHITNEY LLP
U.S. BANK CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## <u>CERTIFICATE OF SERVICE</u>

I, Paul T. Meiklejohn, certify that on October 30, 2008, the foregoing *PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSES OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a)* and *DECLARATION OF MARK S. CARLSON* in support thereof, was electronically filed with the Clerk of the Court using the CM/ECF system and thereby served said documents on counsel for defendants AT&T MOBILITY LLC, NEW CINGULAR WIRELESS SERVICES, INC., and NEW CINGULAR WIRELESS PCS LLC via ECF-generated e-mail and notification.

DATED this 22nd day of May, 2009

/s/ Paul T. Meiklejohn
Paul T. Meiklejohn

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSE
OF GOVERNMENTAL IMMUNITY UNDER 28 U.S.C. § 1498(a) - 1
2:08-cv-00094-TSZ

**DORSEY & WHITNEY LLP**
U.S. BANK CENTRE
1420 FIFTH AVENUE. SUITE 3400
SEATTLE. WA 98101-4010
PHONE: (206) 903-8800
FAX: (206) 903-8820